**906**

Application of Charles H. GREENE.
Patent Appeal No. 8958.

United States Court of Customs
and Patent Appeals.
July 19, 1973.

John W. Melville, Gibson R. Yungblut, Melville, Strasser, Foster & Hoffman, Cincinnati, Ohio, attorneys of record, for appellant.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Fred E. McKelvey, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN and LANE, Judges, and ALMOND, Senior Judge.

LANE, Judge.

This appeal is from the decision of the Board of Appeals sustaining the rejections of claims 1–7 of appellant's application[1] entitled "Drill Proof Plate for Safes and Method of Making Same." We reverse.

1. Serial No. 659,828 filed June 8, 1967, which is said to be a continuation of Serial No. 395,127, filed September 9, 1964, now abandoned.

2. U. S. Patent No. 2,372,607 issued March 27, 1945.

Appellant's invention is a "drill-proof plate structure" for safes, vaults, and the like. The structure comprises two or more plies of metallic sheet material that are "fused directly together to form a unitary structure with a barrier layer of hard particles embedded in the line or lines of fusion." The sheets have a thickness from 1/8 to 1/4 inch and may be of various types but usually comprise a penetration-resistant hardened sheet that is inherently brittle in combination with a relatively soft steel that will bend and flex under impact to lend high impact strength to the composite structure. A "thin" uniform layer of abrasive particles such as tungsten carbide is sandwiched between the sheets and is "embedded in and interlocked with the fused surfaces of the steel sheets in an essentially irregular manner."

Each of the claims on appeal is directed to the composite structure. Claim 1, the sole independent claim, reads as follows:

1. A plate structure comprising at least two metallic sheets, said sheets being fused directly together, a barrier layer, said barrier layer comprising discrete highly abrasive particles, said particles being uniformly dispersed and embedded in the line of fusion between said metallic sheets.

Claims 2–7 impose limitations not in issue in this appeal.

Claims 1–7 were rejected under 35 U.S.C. § 102 as anticipated by Schwarzkopf[2] and alternatively under 35 U.S.C. § 103 as obvious from Schwarzkopf in view of Hawkins[3] and Cottrell.[4]

The board sustained the § 102 rejection, and additionally held as follows:

[I]f there are any differences between the plate structure disclosed by Schwarzkopf and that recited in the

3. U. S. Patent No. 1,977,128 issued October 16, 1934.

4. U. S. Patent No. 2,398,132 issued April 9, 1946.

claims, which differences are not apparent to us, the differences are so slight as to be obvious, and therefore the rejected claims are unpatentable over that reference under 35 U.S.C. 103.

While we make no comment with respect to the Examiner's rejection based upon the secondary references, since we believe the Schwarzkopf patent by itself is sufficient, we will also sustain the Examiner's rejection based upon [Hawkins and Cottrell].

Schwarzkopf discloses a method of making a layered composite structure of one or more armor sheets. An intermediate layer of a powdery mixture of hard particles and "binder" material, such as soft pure iron, is sandwiched between the sheets to increase the resistance to penetration by a projectile. In forming the composite structure, a layer of the powdery mixture is deposited on one sheet and "the hard metal powder is spread uniformly over and pressed into the sheet" by heated rollers to give a "superficial mechanical uniting with [the] sheet." An additional steel sheet is placed on the layer of powder mixture and the composite structure is again pressed between rollers. The structure is then subjected to a "sintering" operation described by Schwarzkopf as follows:

The temperature in [the heating] chamber * * * should be such that the initial hard metal mixture is sintered. Depending upon the nature of the binder, the sintering temperature in [the] chamber * * * should be kept between about 1000 to 1350° C. [(1832 to 2462° F.)], and in any way substantially below the melting point of the armor steel sheet used, and above about 900° C.

During sintering of the binder, also diffusion or coalescing between the binder and adjacent surface layers of the sheets * * * occurs, securing a firm bond between the binder and thereby the hard metal layer * * * and those sheets.

Appellant contends that the Schwarzkopf disclosure fails to respond to two limitations present in all of the claims on appeal. Thus, appellant argues that Schwarzkopf does not disclose a structure in which the plates or sheets are "fused directly together" and in which the particles of the barrier layer are "embedded in the line of fusion between * * * [the] sheets." Rather, appellant urges, the armor plates of Schwarzkopf are joined together by the disclosed intermediate layer.

## OPINION

In rejecting appellant's arguments, the board made express reference to the methods of manufacture disclosed respectively by appellant and Schwarzkopf. We too have considered those methods, especially since the Schwarzkopf structure at the various points of juncture is not clear from the disclosure. We conclude that there is no indication that the structure as defined in appellant's claims is achieved by Schwarzkopf and that the indications are to the contrary.

Appellant's specification discloses that the sandwiched composite structure claimed is formed by heating it in the range of "about 2300° F" and then subjecting it to pressure. While the temperature range disclosed by appellant is encompassed by that disclosed by Schwarzkopf, the effects are disclosed to be different. As taught in Schwarzkopf, the temperature used for sintering is "substantially below the melting point of the armor steel sheet used * * *." Appellant discloses the use of a layer of borax adjacent the layer of carbide particles. Referring to the 2300–2400° F. heating range, appellant's specification states:

[A]t this temperature range the borax acts to raise the temperature of the

adjacent surfaces of the steel sheets to the melting point, whereby to permit fusion of the sheets to form a unitary plate structure.

It might well be that the carbide particles of Schwarzkopf are to some extent embedded in the armor plates by the heated rollers and that such embedding might increase during the sintering step. However, it is not apparent that the disclosed "diffusion and coalescing between the binder and adjacent surface layers of the sheets" as well as whatever embedding might occur is such that the adjacent surfaces of the sheets come in contact with each other or are "fused directly together" to form "a line of fusion."

Given that there is no express teaching in Schwarzkopf of the structure defined in the claims and that the methods of making the respective structures involve clear differences in the effects of the heating steps on the sheets, the board was in error in finding the claimed subject matter anticipated by Schwarzkopf. Nor do we consider the differences between Schwarzkopf and the claimed structure either "slight" or obvious from that patent, at least in the absence of some evidence that one of ordinary skill in the art would have found it obvious to alter the Schwarzkopf method to effect fusion between the armor plates. We have carefully considered the Hawkins patent, which is directed to the formation of a composite welding rod, and the Cottrell patent, which discloses a method of making a cutting tool, but do not find that either or both of those patent disclosures provide the requisite evidence of obviousness. As noted above, the board did not comment on Hawkins and Cottrell, but rested on its conclusion that Schwarzkopf anticipates the claimed invention.

For the reasons set forth herein, the decision of the board is reversed.

Reversed.